UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS CUNNINGHAM, | : | |
| Plaintiff, | : | Civil Action No. 06-cv-428 |
| v. | : | OPINION |
| LENAPE REGIONAL HIGH DISTRICT | : | |
| BOARD OF EDUCATION and DR. | | |
| DANIEL HICKS, SUPERINTENDENT, | : | |
| Defendants. | : | |

**APPEARANCES:**

F. Michael Daily, Jr., Esquire
216 Haddon Avenue, Suite 100
Westmont, NJ 08108
(Attorney for Plaintiff)

Michael P. Madden, Esquire
Madden, Madden & Del Duca
108 Kings Highway East, Suite 200
Haddonfield, NJ 08033

Arthur F. Risden, Esquire
Archer & Greiner
One Centennial Square
Haddonfield, NJ 08033
(Attorneys for Defendants)

**RODRIGUEZ, SENIOR DISTRICT JUDGE**

This matter has come before the Court on Defendants' motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1]  Oral argument was heard on Thursday, September 28, 2006, and the record of that date is incorporated here.  For the reasons that follow, the Court will grant the motion to dismiss under Fed. R. Civ. P. 12(b)(1).

---

[1]  The motion was originally filed as one to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  When the issue of whether further discovery was needed to complete the briefing arose, Defendants retracted their request for summary judgment.

I

Plaintiff Thomas Cunningham has alleged that his First Amendment rights were violated by Defendants Lenape Regional High School District Board of Education and Dr. Daniel Hicks, the Superintendent of the District.  Specifically, Plaintiff contends that since approximately Fall of 2003, he "has expressed as a parent and private citizen his opinions regarding the qualifications and methods of coaching" of the Shawnee High School varsity wrestling coach.  Plaintiff's son is a student at Shawnee High School, located within the Lenape Regional High School District, and has participated in the wrestling program there.  Plaintiff also wrote a petition in an attempt to have the coach removed and "to curb certain of his coaching practices which endangered the athletes in his program."  He maintains that all of the opinions he expressed were "of public concern."  Several staff members, however, contended that Plaintiff's opinions were expressed because he wanted the wrestling head coaching job for himself.

On or about December 28, 2005, Plaintiff received a letter from an attorney for the Defendants stating that he was "no longer permitted to enter Lenape Regional High School District property," including for wrestling matches, basketball games, and graduation ceremonies.  The letter warned that if Plaintiff did enter the property, he would be prosecuted for criminal trespass.  This posed a problem for Plaintiff, in part because he served as coach of a youth wrestling program which used the District's facilities for its activities.

Accordingly, at the January 18, 2006 Board meeting, Plaintiff and his counsel appeared to set forth Plaintiff's position, but the Defendant Superintendent advised the Board and the public that Plaintiff had been banished from District property for "safety"

2

reasons.  Subsequently, the Superintendent, Board counsel, Board members and administrators met with Plaintiff and his attorney.  The Superintendent advised Plaintiff during that meeting that "he had been banished from Board property due to a persistent pattern of abuse, harassment and threats towards staff members."  As an example, the Superintendent stated that Plaintiff "had recently directed obscenities toward staff members."  Plaintiff denied the allegations made at the meeting, claiming that the school authorities acted out of "an undifferentiated fear of him."

After the meeting, Plaintiff was advised that he would be permitted limited access to District property to coach for the youth program and to attend his son's wrestling matches.  He was subject to conditions, however, of arriving at a specific time for coaching, "a duty to report when attending wrestling matches involving his son, a duty to immediately depart at the conclusion of a match, and a ban on any communications with any wrestler or staff member during a match."

Plaintiff's complaint alleges that the restrictions were placed on him "to prevent him from speaking regarding matters of public concern and to punish him for criticizing public officials and employees."  He contends that his activities were protected by "the Free Speech and Petition Clauses of the First Amendment" and his "rights to free speech under the Constitution of New Jersey" were violated.  Plaintiff summarizes his injuries as having missed matches involving his son in the interim of the December letter and the January compromise; having "been denied the right to enjoy the benefits of accommodations, events and functions" that other members of the public can enjoy; having "been denied the right to enjoy the benefits of being a parent of a student . . . [including] the ability to speak to school officials or otherwise act in matters concerning

3

his son"; and having "been denied his rights to speak freely and petition his government for redress."[2]

II

Shortly after filing the Complaint in this matter, Plaintiff's attorney filed a motion for preliminary injunctive relief in the form of a rescission of the banishment of Plaintiff from District property.  In support of the motion, Plaintiff filed an affidavit indicating that, in the Summer of 2004 at a public "open mat" wrestling event at another school, Plaintiff objected to the Shawnee wrestling coach's intention to wrestle with Plaintiff's son and other boys and stated that the coach could wrestle Plaintiff who would give him "$5,000 a point."  As a result, the coach filed a police report to document the incident, which he perceived as a threat.  Plaintiff also described in the affidavit how he lodged complaints about the coach in the Fall of 2004 because his lengthy practices were dangerous to the health of the athletes.  When Plaintiff did not receive satisfactory responses, he wrote to the Board and to the other parents of wrestlers on the team, adding that the coach used "unorthodox and unrecognized training techniques, which in one instance had resulted in a severe injury to a team member."

Plaintiff's affidavit continues by describing and attaching a January 27, 2005 letter from the Principal of Shawnee High School.  The letter outlines restrictions placed upon Plaintiff's visits to the school due to his "continued verbal and written attacks" on

---

[2] Plaintiff filed a motion to amend the Complaint to add that he did not attend his younger son's June 2006 graduation from eighth grade because it was held on District property, and he has been unable to watch summer football practices.  The proposed Amended Complaint also adds a reference to the Fourteenth Amendment, drops the Superintendent as a Defendant, and omits factual allegations contained in paragraphs 18-31 of the Complaint.

4

the wrestling coach and athletic director, which caused the coach concern for his safety and allegedly disrupted the normal operation of the school.  At the end of that school year and into the Summer of 2005, Plaintiff admits that he "lobbied various officials" to express concern about reappointment of the wrestling coach, who Plaintiff deemed "unfit to be Coach and detrimental to the program."  After a two-hour meeting with the Superintendent and Principal, the Superintendent wrote Plaintiff a letter explaining that the viewpoints about the coach were varied, but he would be reappointed, and a mentor for the coach was also retained to ensure fair treatment of the student athletes and to assist the Superintendent in making decisions about the future of the wrestling program.

On December 18, 2005, Plaintiff's son left a special practice because he was told he would have to compete for a place in the lineup by having a "wrestle off" with a student who was not present at the special practice, that is, Plaintiff's son was going to have to miss a meet because another student had missed the special practice.  Plaintiff took his son back to the practice and discussed the matter with the wrestling coaches, after which Plaintiff's son was returned to the team.  The coaches later  characterized the exchange as verbally insulting and threatening.

Three days later, Plaintiff was present at a wrestling meet, and on two occasions wrestlers asked him for advice.  In response, an assistant coach told Plaintiff that "they" did not want him communicating with the wrestlers.  Plaintiff acquiesced, but stated "that the rule should apply to everyone."  That week, the above-referenced letter from the Board's attorney was hand-delivered to Plaintiff.

At the conclusion of his affidavit, Plaintiff denies that he engaged in "any sort of 'alarming and threatening conduct'" and he asserts that he "would not be barred from

5

publicly owned property, to which other members of the public are permitted access, if [he] had not expressed [his] opinions concerning an individual whose salary is paid by the taxpayers of the District."

### III

Plaintiff seeks damages and injunctive relief for Defendants' actions banishing him from District property allegedly in retaliation for constitutionally protected comments concerning the fitness of the wrestling coach.  The federal civil rights statute at issue, 42 U.S.C. § 1983,[3] provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the Constitution.  See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992).   Section 1983 does not itself confer any substantive rights; it merely serves as a vehicle to enforce rights granted through the Constitution or through federal law.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  In order to establish a claim under § 1983, a plaintiff must show that he or she was injured because a person acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States.  Nicini v. Morra, 212 F.3d 798, 805 (3d Cir. 2000); Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998).  Thus, to state a claim under § 1983, a plaintiff must assert two essential

_____

[3]The statute provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

IV

"It is a principle of first importance that federal courts are courts of limited jurisdiction."  13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3522 (2d ed. 1984).  Accordingly, federal courts are duty-bound to ensure that they have jurisdiction over the matters before them.  As noted previously, the instant motion was originally filed as one to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed. R. Civ. P. 56.  When the issue of whether further discovery was needed to complete the briefing arose, Defendants retracted their request for summary judgment, and the Court was left with a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

A motion challenging a federal court's subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) differs from a challenge made pursuant to Fed. R. Civ. P. 12(b)(6) (or Fed. R. Civ. P. 56) in that it does not afford a plaintiff the benefit of all of the same procedural safeguards.  Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997); Cohen v. Kurtzman, 45 F. Supp. 2d 423, 428 (D.N.J. 1999).  Instead, Fed. R. Civ. P. 12(b)(1) attacks the right of a plaintiff to even be heard in federal court.  Id.  As such, a court cannot dismiss a claim under 12(b)(6) without first assuming subject matter jurisdiction; thus, a claim can be dismissed for lack of subject matter jurisdiction or failure to state a claim, but not both.  See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d

7

1406, 1409 (3d Cir. 1991) (holding court must assume jurisdiction over a case before deciding legal issues on the merits); see also Spencer v. Casavilla, 903 F.2d 171, 173 (2d Cir. 1990) (holding "even if court believes that it would dismiss the complaint in response to a motion under [12(b)(6)], that is not reason to dismiss for lack of jurisdiction").

Dismissal is proper under Rule 12(b)(1) only when the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous." Kehr, 926 F.2d at 1408-09 (citing Bell v. Hood, 327 U.S. 678, 682 (1946)). A claim is insubstantial only if "'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.'" Hagans v. Lavine, 415 U.S. 528, 538 (1973) (citing Ex parte Poresky, 290 U.S. 30, 32 (1933)). Under a 12(b)(1) motion, unlike a 12(b)(6) motion, the plaintiff bears the burden of persuasion. Kehr, 926 F.2d at 1409. However, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of a jurisdictional claim." Mortensen v. First Fed'l Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The trial court is free to weigh the evidence to determine if it has subject matter jurisdiction. Id.

Challenges to subject matter jurisdiction under Rule 12(b)(1) may be "facial" or "factual." Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) (citations omitted). Facial attacks "contest the sufficiency of the pleadings, and the trial court must accept the complaint's allegations as true." Turicentro, S.A. v. American

8

Airlines, Inc., 303 F.3d 293, 300 n.4 (3d Cir. 2002) (citing NE Hub Partners, L.P. v. CNG Transmission Corp., 239 F.3d 333, 341 n.7 (3d Cir. 2001)); see also In re Kaiser Group Int'l Inc., 399 F.3d 558, 561 (3d Cir 2005) (In evaluating "facial" subject matter jurisdiction attacks, the court ordinarily accepts all well-pleaded factual allegations as true, and views all reasonable inferences in the plaintiff's favor).  Essentially, a "facial" challenge by the defendant contests the adequacy of the language used in the pleading. Turicentro, 303 F.3d at 300 n.4.

Factual challenges, on the other hand, attack the factual basis for subject matter jurisdiction; that is, in a factual challenge to jurisdiction, the defendant argues that the allegations on which jurisdiction depends are not true as a matter of fact.  See Turicentro, 303 F.3d at 300.  As such, the court is not confined to the allegations in the complaint, but may look beyond the pleadings to decide the dispute.  Cestonaro v. United States, 211 F.3d 749, 752 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891). Thus, presented with a "factual" attack to subject matter jurisdiction, the court must weigh the evidence related to jurisdiction, with discretion to allow affidavits, to determine whether the plaintiff's factual claims are true or untrue.  Turicentro, 303 F.3d at 300.  If the defendant contests the jurisdictional allegations, then "it is incumbent upon the plaintiff to respond to the defendant's sworn factual assertions" with something more than conclusory responses.  Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1981).  If the plaintiff fails to "meet and controvert the defendant's factual proofs, then the district court must determine whether it has subject matter jurisdiction based upon the factual context presented by the defendant."  Id. at 711-12.  However, if the opposing affidavits present a

9

disputed issue of material fact, the court must permit the case to proceed to a plenary

trial to resolve the contested jurisdictional issues.  Id. at 712.

V.

A determination of subject matter jurisdiction under § 1983 is closely related to a

determination of the claim on the merits since the court's ability to hear a § 1983 claim

does not arise from the statute itself, but rather arises because a violation of a federal

constitutional right creates jurisdiction under other statutes.  See Haggins, 415 U.S. at

535.  However, "a court may determine subject matter jurisdiction without reaching the

merits, so long as the court 'demand[s] less in the way of jurisdictional proof than would

be appropriate at the trial stage.'" Gould Electronics Inc. v. United States, 220 F.3d 169,

178 (3d Cir. 2000) (citing Mortensen, 549 F.2d at 891)).  Under a § 1983 rubric, this case

essentially asks the Court to determine whether the Plaintiff has sufficiently alleged facts

that make out a federal constitutional violation such that jurisdiction is appropriately

placed in federal court.

VI.

Plaintiff alleges that his rights "to speak freely and petition his government for

redress" have been violated because the Defendants banished him from public property.

(Amended Compl. at ¶¶ 21, 26.)  While Plaintiff concedes that the Defendants do have

the right to bar persons from their property whose conduct they reasonably perceived as

dangerous or disruptive to the educational process, (Cunningham Opposition Brief at 1),

he avers that his banishment was done not for legitimate reasons but for retaliation for

exercising his constitutional right to free speech.  (Amended Compl. at ¶¶ 25-26.)

Plaintiff further alleges his claim is actionable under 42 U.S.C. § 1983 and the Court has

10

subject matter jurisdiction under 28 U.S.C. § 1331.  (Id. at ¶ 4.)  Under a Rule 12(b)(1)

facial challenge, Plaintiff's claim survives because the complaint properly states federal

subject matter jurisdiction.

VII.

Plaintiff's claim, however, does not survive a factual challenge to subject matter

jurisdiction.  Plaintiff relies favorably on Perry v. Sniderman, 408 U.S. 593, 597 (1972),

for the proposition that even though a person may not have a right to a "valuable

governmental benefit," that benefit cannot be denied if such action is taken to punish a

person for exercising a constitutionally protected right.  (Cunningham Opposition Brief

at 11-12.)  However, while Plaintiff suggests that this truism supports his retaliation

charge, (id. at 11), in the Court's view, this statement of law only serves to illuminate the

sheer insubstantiality and frivolity of Plaintiff's claim.

The substantiality doctrine holds that a claim of federal subject matter

jurisdiction is insubstantial where previous decision of the court foreclose any room for

further inquiry.  Hagans, 415 U.S. at 538.  In this case, a strong inference exists that

previous decisions of the courts do in fact foreclose questions about whether a person

has the right or benefit of access to schools.  See Lovern v. Edwards, 190 F.3d 648, 656

(4th Cir. 1999) (holding plaintiff's assertions that school administrators must provide

him with boundless access to school property are "obviously without merit"); Mitchell v.

Beaumont Independent School District, Civil No. 1:05-CV-195, 2006 WL 2092585 *10

(E.D. Tex. 2006) (holding court cannot locate any decision interpreting the Due Process

Clause to create "a parental right of unfettered access to school property or facilities")

(emphasis added); Van Deelen v. Shawnee Mission Unified School District, 316 F. Supp.

11

2d 1052, 1057 (D. Kan. 2004) (holding school officials have authority to control parents and third parties while on school property); State v. Karr, 291 A.2d 845, 847 (N.J. Super. Ct. App. Div. 1972) (holding "the public's right and overriding need to have its schools run without outside interference permits a reasonable limitation on [first amendment rights]"); State v. Besson, 266 A.2d 175, 178 (N.J. Super. Ct. Law Div. 1970) (holding "the interest of the State in maintaining an educational system is a compelling one. Order is necessary to accomplish this. . .").

   If Plaintiff's claim is to be interpreted not as a violation of a right or benefit of access, but rather solely as a violation of his right to free speech, the Court can find no evidence in the record suggesting any impermissible conduct by the Defendants sufficient to overcome a Rule 12(b)(1) motion.  The right to free speech is not limitless. Carey v. Brown, 447 U.S. 455, 470 (1980).  The Supreme Court has held, for example, that even peaceful communication may be restricted through reasonable measures where it interferes with "vital governmental facilities."  Id.  The Constitution does not leave the government powerless to protect against disruptive conduct, even speech, in public places such as schools "that require peace and quiet to carry out their functions." Id. at 470-71 (citing Gregory v. Chicago, 394 U.S. 111, 118 (1969) (Black, J., concurring)).

   Plaintiff denies that he acted in a threatening or abusive manner.  (Daily Affidavit at ¶ 5.)  However, Plaintiff readily acknowledges that he did contact the Defendants in some fashion on at least six occasions.  (Cunningham Affidavit at ¶¶10-14-July 22,2004, "Open mat" session; ¶19-Fall 2004, Letters to administrators; ¶20-Letters to B.O.E and parents; ¶27-late 2004, "Lobbying efforts"; ¶¶ 30-33-Dec. 18,2005-Contacted Coach Mann at practice; ¶36-Dec. 21, 2005, Talked w/ assistant coaches at meet).  The

substance and tone of these contacts, particularly the in-person contacts, are in genuine dispute.  Nevertheless, these disputes are not material to the underlying assertion of a violation of First Amendment rights.  As established, school officials are well within constitutional bounds in limiting access to school property where it is necessary to maintain tranquility.  See Lovern, 190 F.3d at 655.  The Defendants made all reasonable efforts to notify Plaintiff that his concerns had been or were being addressed and also that he was bound by safety procedures regulating access to the school and school officials. (See Fleischman Affidavit, Exhibit 3-Letter to Plaintiff, August 30, 2004; id., Exhibit 4-Letter to Plaintiff, December 21, 2004; id., Exhibit 1-Board of Education Visitors Policy[4].)  When Plaintiff demonstrated a willingness to disregard these procedures, (id. at ¶ 46), Defendants took further measures to restrict Plaintiff's access. (Id., Exhibit 11-Letter to Plaintiff, January 27, 2005 ).  Even after violations of these new policies, Defendants still allowed Plaintiff access to the school and school administrators if he abided by the established guidelines.  (Id. at ¶ 69.)

Plaintiff's argument appears to be that the mere fact that there are restrictions on him evidences an impermissible retaliation for his exercise of free speech rights. (Cunningham Affidavit at ¶ 41.)  However, this argument fails for two reasons.  First, there is *nothing* in the record suggesting that Plaintiff was denied in the past or will be

---

[4]  The Board of Education School Visitors Policy provides:

Maintaining a safe school environment is of prime concern to Lenape Regional High School District ("Lenape").  In order to address this concern, Lenape requires all visitors to any Lenape school during the school day to report directly to the main office upon arrival, and to register with the receptionist. . . .

Fleischman Affidavit, Exhibit 1.

denied in the future the right to exercise his First Amendment rights of speech or petition. (See Oral Argument at 10-11, lines 21-25, 1: "They have not curtailed his, (sic) directly curtailed his ability to speak out or criticize."; Fleischman Affidavit at ¶ 76: Plaintiff allowed to coach youth wrestling at school; id. at ¶ 80: Plaintiff allowed to attend wrestling matches). The Defendants have shown that Plaintiff is free to contact the school and even access the school in an appropriate manner. (Oral Argument at 24, lines 19-24.)

Second, Plaintiff has failed to provide any evidence suggesting a causal connection between protected speech and retaliation by the Defendants. While the Plaintiff asserts that this is a question of fact for the jury, (Daily Affidavit at ¶ 12), on a Rule 12(b)(1) motion to dismiss, Plaintiff must rely on something more than his pleadings to show that a federal court has subject matter jurisdiction. Int'l Ass'n of Machinists, 673 F.2d at 711. Where a plaintiff presents a § 1983 claim, he must produce evidence showing there has been some violation of a constitutional right. See Nicini, 212 F.3d at 805.

There is no such evidence here. The closest the Plaintiff's case comes to any federal constitutional violation is a bald assertion that his speech caused him to be barred from Defendants' property. (Cunningham Affidavit at ¶ 41.) However, given the voluminous eye witness depositions and written communication about and from the Plaintiff, the Court cannot see how Defendants' actions were anything more than discretionary safety measures taken well within constitutional limits. (See Fleischman Affidavit at ¶ 12: "Shawnee teachers and staff, have informed me that they feel threatened by Mr. Cunningham. . ."; Matthews Affidavit at ¶ 65: "[Plaintiff's] presence

14

on District property and at District events causes a real threat to the safety of the

District's students, staff, teachers, and administrators. . ."; Pullen Affidavit at ¶ 3: "Over

the years, Mr. Cunningham has verbally abused, threatened, harassed, undermined and

had countless confrontations and arguments with every head coach of the Shawnee

Wrestling team. . ."; Jensen Affidavit at ¶ 12: "I am still very uneasy when I encounter

Mr. Cunningham on District property. . ."; Stewart Affidavit at ¶ 18: "At that point, Mr.

Cunningham began yelling at us in front of the wrestlers, and telling us what he thought

of Mr. Mann personally and as a coach. . ."; Mann Affidavit at ¶ 2: "Since I was hired as

the head coach of the Shawnee Wrestling team, I have been verbally abused, threatened,

harassed, personally vilified, and undermined by Thomas Cunningham. . . "; Bialy

Affidavit at ¶ 6: "I feel threatened by Mr. Cunningham because I am uncertain how he

will respond, and I feel that it is only a matter of time before he physically assaults me . .

. .")

    The Court cautions that this assessment is not a review of the merits of the case,

but rather an inquiry into a minimum evidentiary threshold that the Plaintiff must

withstand to prove federal jurisdiction.  See Kehr Packages, 926 F.2d at 1409 (holding

threshold to withstand Rule 12(b)(1) motion is lower than threshold for Rule 12(b)(6)

motion).  In the educational context, courts–especially federal ones–are not the

appropriate forum for resolving daily conflicts arising from the operation of school

systems.  See Epperson v. Arkansas, 393 U.S. 97, 104 (1968) (holding public education is

committed to state and local authorities and courts cannot interfere in daily operations

unless a basic constitutional right is "directly and sharply" implicated).  Plaintiff can

continue petitioning the Board of Education to the outer limits of his First Amendment

Rights; however, his claim can proceed no further before this Court.

Lastly, the Court takes notice of the important public policy matters that cases like this implicate. Certainly the right of a parent to be involved in the process of a child's education is not something the Court should restrain lightly. See Jeffrey v. Board of Trustees of Bells ISD, 261 F. Supp. 2d 719, 726 (E.D. Tex. 2003) (holding parents possess "a fundamental liberty interest in the right to direct the education and upbringing of their children") (citing Meyer v. Nebraska, 262 U.S. 390 (1923); Pierce v. Society of Sisters, 268 U.S. 510 (1925); Wisconsin v. Yoder, 406 U.S. 205 (1972)). However, the reality of our times, and indeed common sense, suggests that the public–parents included–cannot have unfettered access to the halls of learning. We are not too far removed from the tragedies of Columbine or the Amish school shooting to forget that the safety of our children and school officials is paramount.[5]

While Plaintiff would have the Court believe he too was only acting in the best interests of his children, (see Cunningham Affidavit at ¶ 19), unfortunately for him, the record is rich with witnesses and written evidence of what can only be described as truly outrageous behavior. In reviewing all of this evidence for subject matter jurisdiction, the Court can only determine that this case is, at best, the last efforts of a spurned job applicant, and at worst, yet another attempt to bully the Defendants into compliance

---

[5]Moreover, the Court notes that New Jersey in particular seems to favor affording greater protection to school officials in the exercise of their jobs. See N.J. Stat. Ann. § 2C: 12-1(b)(5)(d) making simple assault aggravated assault when the actor knowingly commits the assault against "any school board member, school administrator, teacher, school bus driver or other employee of a school . . . while clearly engaged in the performance of his duties . . . ."

with Plaintiff's wishes.  The law is clear: a school need not wait to act until perceived threats become actual harm.  See Lovern, 190 F.3d at 655.  Defendants' belief here that Plaintiff posed a danger is objectively reasonable given the evidence before the Court.  He cannot hide behind the protections of the First Amendment to harass and bully the faculty and staff of Lenape Regional High School District.  Plaintiff's case is truly "a monument to what ought not be in federal court."  Lovern, 190 F.3d at 654.  Therefore, Plaintiff's claim is dismissed pursuant to Rule 12(b)(1).

VIII.

Plaintiff's second claim under N.J. Stat. Ann. § 10:6-1 is also dismissed because the sole federal claim over which the court has jurisdiction is dismissed and the interests of judicial economy, convenience, or fairness to the litigants do not warrant review of that claim in this forum.  See Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993); 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(3) the district court has dismissed all claims over which it has original jurisdiction. . . .").

IX.

Finally, Plaintiff has taken issue with the Board policy that no matters "pertaining to litigation, student or personnel items or negotiations" are discussed in public.  Such a policy conforms with New Jersey's Open Public Meeting Act, N.J. Stat. Ann. § 10:4-12(b)(7) and (8),[6] rendering Plaintiff's argument without merit.  See also Thomas v.

---

[6] The statute provides, in pertinent part:

b. A public body may exclude the public only from that portion of a meeting at which the public body discusses:

17

<u>Morris Twp. Bd. of Educ.</u>, 215 A.2d 35, 37 (N.J. Super. Ct. App. Div. 1965) (holding presumption of validity when administrative body acts "unless affirmative showing that such decision was arbitrary, capricious or unreasonable"), <u>aff'd</u> 218 A.2d 630 (N.J.1966).

X.

For the above stated reasons, Defendants' motion to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) is hereby **GRANTED**.

An appropriate Order has been entered.


_____   /s/Joseph H. Rodriguez___
JOSEPH H. RODRIGUEZ
U.S.D.J.

Dated: June 25, 2007

---

(7) Any pending or anticipated litigation. . .
(8) Any matter involving the employment, appointment, termination of employment, terms and conditions of employment, evaluation of the performance of. . . any. . .employee. . .appointed by the public body. . . .

18